UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANASTASIA ST. CLAIR-HANNAH,

                Plaintiff,

         - against -

CVS CAREMARK CORPORATION,

                Defendant.

-----------------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, ANASTASIA ST. CLAIR-HANNAH, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff ST. CLAIR-HANNAH complains pursuant to the New York State Executive Law § 296 (2)(a) *et seq.* and the New York City Administrative Code § 8-107 *et seq.* and seeks damages to redress the injuries Plaintiff has suffered as a result of being sexually harassed and discriminated against on the basis of her sex and gender.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city laws pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York. 28 U.S.C.

§1391(b).

## PARTIES

5. Plaintiff ANASTASIA ST. CLAIR-HANNAH ("ST. CLAIR-HANNAH") is a resident of the State of New York and County of Queens.

4. Defendant CVS CAREMARK CORPORATION ("CVS") is a business corporation, with its principal place of business located at 1 CVS Dr., Woonsocket, RI 02895.

5. At all times material, Defendant CVS was a place of public accommodation, as it provides services to the public.

6. At all times material, Defendant CVS owned, operated and/or maintained a store located at 97-15 Metropolitan Avenue, Forest Hills, NY 11375 ("CVS Store").

## MATERIAL FACTS

7. Plaintiff ST. CLAIR-HANNAH was a regular customer at Defendant's CVS Store since 2005.

8. As a regular customer, Plaintiff ST. CLAIR-HANNAH had a good relationship with Defendant's employees.

9. However, everything changed in or around June 2015, when Plaintiff ST. CLAIR-HANNAH was subjected to unwelcomed and unwanted advances by Defendant's employee, the CVS Store's Assistant Manager, Robert (Last Name Unknown.)

10. Robert started expressing his sexual interest in Plaintiff ST. CLAIR-HANNAH by continuously engaging her in prolonged conversation, which Plaintiff tried to politely avoid.

11. Robert's advances towards Plaintiff ST. CLAIR-HANNAH quickly escalated, when Robert began exposing his penis to Plaintiff in the parking lot of the CVS store late at night.

12. Robert exposed himself to Plaintiff ST. CLAIR-HANNAH for the first time in or around late May of 2015. Robert was smoking a cigarette outside of the CVS Store, leaning on a wall, as Plaintiff made her way from her car to the store. As Plaintiff approached, she noticed that Robert's penis was exposed. Shocked and humiliated, Plaintiff avoided Robert and walked into the store.

13. While Plaintiff shopped, she continued to avoid Robert, who stared at Plaintiff, smiling at her enticingly.

14. Robert continued to expose his penis to Plaintiff ST. CLAIR-HANNAH in the CVS Store's parking lot, despite Plaintiff's attempts to avoid him. He exposed himself to Plaintiff three (3) or four (4) times.

15. Then, in or around late June of 2015, Robert approached Plaintiff ST. CLAIR-HANNAH once again, in the parking lot of the CVS Store. Plaintiff was in her car, getting ready to leave, when she turned towards her window and saw Robert, with his penis fully exposed, in close proximity to her face.

16. Terrified, Plaintiff ST. CLAIR-HANNAH objected to Robert's frightening advance, by asking him to leave her alone.

17. At that point, Robert noticed Plaintiff ST. CLAIR-HANNAH's LGBT flag hanging in her car and said, "That's why you keep turning me down! Are you gay or a lesbian?"

18. Plaintiff ST. CLAIR-HANNAH responded that she was neither, stating that she was a transgendered woman. Robert was immediately stunned by Plaintiff's reply, exclaiming, "Oh shit! That is disgusting!" as he zipped up his trousers.

19. Hurt and humiliated, Plaintiff ST. CLAIR-HANNAH asked Robert to leave her alone and drove away.

20. Approximately two weeks later, Plaintiff ST. CLAIR-HANNAH visited the CVS Store

again. When Robert saw Plaintiff approach him, he denied services to Plaintiff, in Mike's presence, by telling Plaintiff ST. CLAIR-HANNAH that she could not shop there anymore because Plaintiff was a "he-she" and "nasty."

21. Feeling offended and demeaned, but determined to fight back, Plaintiff ST. CLAIR-HANNAH told Robert that she would continue to shop at the CVS Store, as she proceeded to enter the store.

22. While Plaintiff ST. CLAIR-HANNAH spoke with Robert, she heard the mocking laughs of Mike and other employees in the CVS Store, as they referred to her as "he-she," "it," and "disgusting."

23. Subsequently, other employees at the CVS Store started denying service to Plaintiff ST. CLAIR-HANNAH, by refusing to accept Plaintiff's coupons and by refusing to assist Plaintiff if she had any questions regarding Defendant CVS' products.

24. Defendant CVS' employees further refused to allow Plaintiff ST. CLAIR-HANNAH to purchase Defendant's products by refusing to assist her at the register.

25. Several times, Plaintiff ST. CLAIR-HANNAH was forced to leave Defendant's merchandise at the register and leave the CVS Store crying, feeling humiliated and degraded by the blatant discriminatory acts of Defendant CVS' employees.

26. Then, on or about June 28, 2015, Plaintiff ST. CLAIR-HANNAH visited the CVS Store again. When Plaintiff arrived at the parking lot, Robert and Mike were standing outside, smoking cigarettes. Once they saw Plaintiff ST. CLAIR-HANNAH pull up in her car, they approached Plaintiff telling her she could not "go into the store" and that she was not "welcomed there."

27. Once again, determined to fight back against the outrageous discrimination to which she was being subjected solely on the basis of her sex and gender, Plaintiff ST. CLAIR-

4

>   HANNAH asked Mike and Robert to leave her alone and told them that she was going to shop at the CVS Store. Mike and Robert were unable to stop Plaintiff ST. CLAIR-HANNAH from going into the store, due to the fact that there were people witnessing their exchange in the parking lot.

28. Thus, Plaintiff ST. CLAIR-HANNAH entered the store and selected her items. However, when she went to the register, Robert refused to accept her coupons and told Plaintiff that was the last time he "would ring [her] up at the register" and "let [her] shop there."

29. When Plaintiff ST. CLAIR-HANNAH asked Robert why he was not accepting her coupons, Robert told Plaintiff that she was "lucky" that he was even letting Plaintiff shop at the CVS Store that night because Robert did not "let freaks shop there."

30. Plaintiff ST. CLAIR-HANNAH felt so humiliated and degraded by Robert's discriminatory comments that she was overwhelmed by tears. Meanwhile, another employee of Defendant CVS, who witnessed the exchange, mercilessly laughed at the discriminatory, degrading comments to which Plaintiff ST. CLAIR-HANNAH was subjected by Robert.

31. Thereafter, Plaintiff ST. CLAIR-HANNAH asked to speak to the Manager. Robert said that he was the Manager, but Plaintiff insisted that she wanted to speak to the General Manager. After initial resistance, Robert paged Mike, the General Manager, who eventually came out of his office to speak to Plaintiff.

32. Plaintiff ST. CLAIR-HANNAH complained to Mike regarding Robert's discriminatory comments towards Plaintiff, his refusal to accept Plaintiff's coupons, Robert's threat that he would not allow Plaintiff to shop at the CVS store again and the fact that Robert had exposed himself to Plaintiff.

33. However, instead of taking remedial action, Mike condoned Robert's discriminatory

conduct by telling Plaintiff ST. CLAIR-HANNAH that there was nothing Mike could do about how Robert felt and that he could not force Robert to accept Plaintiff's coupons.

34. Realizing that Mike had no intention of exercising his supervisory authority to remedy the discrimination, Plaintiff ST. CLAIR-HANNAH told Robert and Mike that she was going to complain to Defendant CVS' corporate office.

35. While Plaintiff ST. CLAIR-HANNAH continued speaking to Robert, Mike went outside, where he awaited Plaintiff's exit.

36. Plaintiff ST. CLAIR-HANNAH then left the store, without being able to purchase the products she had selected. As Plaintiff exited the store, she saw Mike walking towards the store from the parking lot, with a marker in his hand. Mike warned her that she was not welcomed at the CVS Store because they [referring to Defendant] "do not welcome freaks and he-she's" to the CVS Store.

37. Offended and humiliated Plaintiff told Mike again that she was going to complain to Defendant CVS's corporate office. However, unmoved Mike laughed at Plaintiff telling her to "go ahead" showing Plaintiff ST. CLAIR-HANNAH his employee tag, which stated his name, contemptuously adding that Plaintiff should give Defendant CVS's corporate office his name.

38. Shaken by Mike's audacious discriminatory conduct, Plaintiff ST. CLAIR-HANNAH proceeded towards to leave the CVS Store, by walking to her car. When Plaintiff approached her car, which was parked in close proximity to the store, she noticed that her car was vandalized. Plaintiff's car was keyed and the words "he-she" and "fucking man" were written in bold letters on the side of her car.

39. Plaintiff, then turned to Mike and asked, "Did you do this?" Mike responded, "How do you like that?"

40. Traumatized, Plaintiff ST. CLAIR-HANNAH drove away crying.

41. The next day, on or about June 29, 2015, Plaintiff ST. CLAIR-HANNAH called Defendant CVS' corporate headquarters at (401) 765-1500 to complain regarding the discriminatory conduct to which she was subjected at the CVS Store, solely on the basis of her sex and gender.

42. Plaintiff ST. CLAIR-HANNAH spoke to Ann (Last Name Unknown) and Fennie (Last Name Unknown) who listened to Plaintiff's complaints of discrimination by Defendant CVS.

43. Fennie gave Plaintiff an internal claim reference number, "5168874" and told Plaintiff ST. CLAIR-HANNAH that someone would contact her within 48 hours.

44. On or about July 7, 2015, Roy Blake, Defendant CVS' District Manager, called Plaintiff and told her that Defendant's corporate office had transferred Plaintiff's complaint to Mr. Blake for investigation. Mr. Blake added that "he was going to look into it" and "get back" to Plaintiff.

45. Mr. Blake called Plaintiff ST. CLAIR-HANNAH again on or about July 21, 2015, informing Plaintiff that he met with Defendant CVS' managers, Robert and Mike and "warned them" that if "they continued" [referring to Robert and Mike engaging in further discriminatory acts against Plaintiff] "their jobs would be at stake" and that they needed to treat Plaintiff with respect.

46. Mr. Blake added that he was going to enroll Defendant CVS' managers, Robert and Mike in sensitivity training and that if they subjected Plaintiff ST. CLAIR-HANNAH to further discriminatory treatment, they would be terminated.

47. Plaintiff ST. CLAIR-HANNAH, however, has not returned to the CVS Store, due to the trauma and humiliation she suffered at the hands of Defendant CVS' managers, Robert

and Mike and from fear of facing her harassers, who continue to enjoy the privilege of maintaining their positions, despite their egregious discriminatory conduct against Plaintiff.

48. Plaintiff ST. CLAIR-HANNAH contacted Defendant CVS' corporate office again, asking whether Robert and Mike could be transferred to another store. However, Defendant CVS' representative told Plaintiff that Mr. Blake had "done everything that he could do" and that "dealing with people's employment [was] a very sensitive issue."

49. Subsequently, Defendant CVS' District Manager, Mr. Blake, added insult to Plaintiff's injury by sending Plaintiff ST. CLAIR-HANNAH a letter, dated July 23, 2015, where he asked Plaintiff to accept Defendant CVS' apology for "the inconvenience [Defendant] may have caused" Plaintiff.

50. Mr. Blake enclosed a $50 gift card as his "way of saying thank you [to Plaintiff] for bringing this matter to [his] attention." Furthermore, Mr. Blake hoped that Plaintiff ST. CLAIR-HANNAH would give that gift back to Defendant CVS "by using that gift card to give CVS another opportunity to regain [Plaintiff's] patronage."

51. As a result of Defendant CVS' actions, Plaintiff ST. CLAIR-HANNAH feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

52. As a result of the acts and conduct complained of herein, Plaintiff ST. CLAIR-HANNAH has suffered and will continue to suffer severe emotional distress, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

53. Defendants' actions and conduct were intentional and intended to harm Plaintiff ST. CLAIR-HANNAH.

54. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff ST. CLAIR-HANNAH demands Punitive Damages against

Defendant.

## FIRST CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK STATE EXECUTIVE LAW ARTICLE 15 § 296

55. Plaintiff ST. CLAIR-HANNAH repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

56. New York State Executive Law § 296 (2)(a) states:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, military status, sex, or disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

57. Defendant violated the section cited herein as set forth.  As a direct result of the foregoing, Plaintiff ST. CLAIR-HANNAH has been significantly damaged.

## SECOND CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE § 8-107

58. Plaintiff ST. CLAIR-HANNAH repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

59. The Administrative Code of the City of New York § 8-107 (4) states:

> Unlawful discriminatory practices. 4. Public accommodations. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or

    employee of any place or provider of public accommodation because of the actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, or, directly or indirectly, to make any declaration, publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status or that the patronage or custom of any person belonging to, purporting to be, or perceived to be, of any particular race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status is unwelcome, objectionable or not acceptable, desired or solicited.

60. Defendant violated these sections of the law as cited herein and set forth. As a direct result of the foregoing, Plaintiff ST. CLAIR-HANNAH has been significantly damaged.

### THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

61. Plaintiff ST. CLAIR-HANNAH repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

62. New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      i. the employee or agent exercised managerial or supervisory responsibility; or

      ii. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

      iii. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

64. Defendant violated the section cited herein as set forth.

## JURY DEMAND

65. Plaintiff ST. CLAIR-HANNAH requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff ST. CLAIR-HANNAH respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful practices prohibited by the New York City Administrative Code and the New York State Executive Law Article 15 of the Human Rights Law in that Defendant CVS discriminated against Plaintiff ST. CLAIR-HANNAH on the basis of her gender and sex;

B. Awarding damages to Plaintiff ST. CLAIR-HANNAH to make her whole for any losses

C. Awarding Plaintiff ST. CLAIR-HANNAH compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff ST. CLAIR-HANNAH punitive damages;

E. Awarding Plaintiff ST. CLAIR-HANNAH attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff ST. CLAIR-HANNAH such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful practices.

Dated: New York, New York
November 17, 2015

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: _____
Nicole Welch, Esq.
Dorina Cela, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
nwelch@tpglaws.com
dcela@tpglaws.com

12